FILED

1  Anoush Hakimi (SBN 228858)
2  anoush@handslawgroup.com
   Peter Shahriari (SBN 237074)      2022 JUL -1 AM 11: 48
3  peter@handslawgroup.com
4  **THE LAW OFFICE OF HAKIMI & SHAHRIARI**     CLERK U.S. DISTRICT COURT
   1800 Vine Street                             CENTRAL DIST OF CALIF
5  Los Angeles, CA 90028                        LOS ANGELES
6  Telephone: (888) 635-2250          BY:_____
   Facsimile: (213) 402-2170
7
8  Attorneys for Plaintiff-Relator,
   **RELATOR, LLC**
9

10           **UNITED STATES DISTRICT COURT**
11           **CENTRAL DISTRICT OF CALIFORNIA**

12
   **UNITED STATES OF AMERICA,**      Case No.
13                                    **LACV22-4519**-DMG-KLS(x)
           Plaintiff,
14
   *ex rel.* **RELATOR LLC**, a California     **COMPLAINT FOR VIOLATIONS**
15 limited liability company,              **OF FEDERAL FALSE CLAIMS**
16                                          **ACT**
           Relator,
17                                     **FILED *IN CAMERA* UNDER SEAL**
   v.                                  **PURSUANT TO 31 U.S.C. §**
18                                     **3730(b)(2)**
   **JEOFFREY BRONCHICK,** an
19 individual, **COVE STREET CAPITAL,**     **DO NOT PLACE ON PACER**
   **LLC,** a Delaware limited liability
20 company; and  DOES 1-10,
21                                     **JURY TRIAL DEMANDED**
           Defendants.
22

23

24

25 _____

26 ///

27
   ///
28

   _____

                    COMPLAINT

Plaintiff RELATOR LLC (hereinafter referred to as "Plaintiff") complains of **JEOFFREY BRONCHICK**, an individual (the "Individual Defendant"), **COVE STREET CAPITAL, LLC**, a Delaware limited liability (the "Corporate Defendant"); and DOES 1-10 (together with the Corporate Defendant and the Individual Defendant, collectively, the "Defendants"), and alleges as follows:

## I.    INTRODUCTION

1.    This is a case about greed during a national health emergency. In this case, Jeoffrey Bronchick ("Bronchick"), an individual, a hedge fund manager requested and received two (2) PPP loans in the total amount of **$535,940.00** for the stated purpose of covering payroll costs for his employees. However, Bronchick's business, is a hedge fund that is primarily engaged in investment and speculation and is therefore ineligible to receive a PPP loan.

2.    The Small Business Administration ("SBA") is expressly clear that hedge funds are not eligible whatsoever to obtain PPP loans. These rules are glaring and are clear. The Defendant, Mr. Bronchick, should never have applied for this money. He should never have accepted the money. He should have immediately returned the money. He failed on all these points, and moreover he applied for and received forgiveness of both loans.

3.    The Defendants applied for the first PPP loan on April 14, 2020, and then unashamedly applied to have the loan forgiven on November 30, 2020, after a

2

COMPLAINT

record-breaking stock market rally that saw the Dow Jones Industrial Average up by 25.06%, the S&P 500 up by 25.97% and the NASDAQ up by 40.02%. Since Defendants are paid fees based on the amount of assets under management, this means that the Defendants were earning even more tens of millions on the $600 million they have under management. Despite the fact that Defendants are and were lavishly wealthy and were doing financially better as a result of the pandemic, they took advantage of the US taxpayers. Defendants illegally took advantage of the government PPP assistance program which was supposed to be for working families, not cunning multi-multimillionaires looking for a windfall. Defendant Bronchick took from the actual small businesses that suffered through the pandemic. While working families suffered, some unscrupulous wealthy businessmen violated our public trust and got away with it, until now..

4.     Defendants perpetrated the embezzlement once, then did it again. This same pattern of shameful conduct was then repeated with their second PPP loan. The Defendants applied for the second PPP loan on March 1, 2021, and then brazenly applied to have the loan forgiven on December 16, 2021. By this point the stock market rally had reached new heights with the Dow Jones Industrial Average up by 48.3%, the S&P 500 up by 60.74% and the NASDAQ up by 80.96%.

5.     In addition to being ineligible for a PPP loan, the amounts sought by the Corporate Defendant were exorbitantly above the $100,000 per employee

COMPLAINT

annual payroll limits imposed by the SBA.

6.    In other words, Defendants not only obtained PPP proceeds when they were not supposed to, when they were not eligible and had no economic necessity, but also took excessively large amounts which are clearly prohibited by the program rules, all while depriving eligible small businesses of access to PPP proceeds during a national emergency.

7.    The Defendants made many material false statements to the government in order to deceive the SBA to obtain these large loans and did it for an impermissible purpose.

8.    Defendants communicated in writing, deceptive statements, including without limitation, with respect to the necessity of the loan proceeds, the number of employees, the calculation of the loan amount, the purpose of the loan, and the use of the proceeds, among others.

9.    Plaintiff-Relator, Relator LLC on behalf of the United States of America brings this action to recover treble damages, civil penalties, and costs under the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-33, and to recover damages and other monetary relief under the common law and equitable theories of unjust enrichment and payment by mistake.

10.    This action arises from numerous false statements and claims that the Defendant knowingly presented to the United States and the United States Small

Business Administration ("SBA") and lenders acting on the SBA's behalf, in violation of the FCA and common law.

11.   The Defendants unlawfully hundreds of thousands of dollars of PPP Proceeds (as defined below), and failed to return or repay the money.

12.   In summary, the Individual Defendant used the Corporate Defendant to obtain large PPP loans from the government. He deceptively completed the SBA loan applications by seeking money for a business that was expressly not eligible and for employee salaries that exceeded the $100,000 per employee per year limit.

## II.   THE PARTIES

13.   Plaintiff-Relator LLC, is a California limited liability company with its principal place of business in Los Angeles, California.

14.   Defendant Jeoffrey Bronchick ("Individual Defendant") is an individual and, at all relevant times herein, is and was member and manager of Corporate Defendant. Per Securities and Exchange Commission filings he owns seventy five percent (75%) or more of the Corporate Defendant. He is also identified as a Principal and Portfolio Manager of Corporate Defendant.

15.   Defendant Cove Street Capital, LLC, is a Delaware limited liability company ("Corporate Defendant") with its principal place of business in El Segundo, California.

16.   During round 1 of the paycheck protection program, Corporate Defendant applied for a PPP loan for **$247,300.00**. It was approved on April 14,

2020 by the SBA for an amount of **$247,300.00**. The loan was facilitated by First Republic Bank. Corporate Defendant received 100% of the approved amount. On its application for this loan, Corporate Defendant stated that it had 12 employees. The SBA forgave $248,669.00 of this loan on November 3, 2020.  Said loan hereafter referred to as the "PPP Loan 1."

17.    During round 2 of the paycheck protection program, Corporate Defendant applied for a second PPP loan for **$288,640.00**. It was approved on March 1, 2021 by the SBA for an amount of **$288,640.00**. The loan was facilitated by First Republic Bank. Corporate Defendant received 100% of the approved amount. On its application for this loan, Corporate Defendant stated that it had 9 employees, thereby reflecting an average salary of $153,940.00 per year. Said loan hereafter referred to as the "PPP Loan 2." Hereafter, PPP Loan 1 and PPP Loan 2 shall together be collectively referred to as the "PPP Loans."

### III.    The CARES Act and Paycheck Protection Program

18.    On March 27, 2020, the Coronavirus Aid, Relief, and Economic Security Act ("the CARES Act" or "the Act") (Pub. L. 116-136) became law and provided emergency assistance and health care response for individuals, families, and businesses affected by the coronavirus pandemic. SBA received funding and authority through the Act to modify existing loan programs and establish a new loan program to assist small businesses nationwide adversely impacted by the COVID-19 emergency.

COMPLAINT

19.    The CARES Act authorized loans to eligible small businesses struggling to pay employees and other business expenses as a result of the devastating effect of the COVID-19 pandemic.

20.    Section 1102 of the CARES Act temporarily permitted the SBA to guarantee 100 percent of 7(a) loans under a new program titled the "Paycheck Protection Program" ("PPP").

21.    On April 24, 2020, the Paycheck Protection Program and Health Care Enhancement Act (Pub. L. 116-139) became law and provided additional funding and authority for the PPP. On June 5, 2020, the Paycheck Protection Program Flexibility Act of 2020 (Flexibility Act) (Pub. L. 116-142) became law and changed key provisions of the Paycheck Protection Program, including provisions relating to the maturity of PPP loans, the deferral of PPP loan payments, and the forgiveness of PPP loans.

22.    Under the PPP, in 2020, eligible businesses could obtain one SBA guaranteed PPP loan. Businesses were required to spend loan proceeds for employee compensation, rent or mortgage, and other specified expenses and, depending on their use of the loan proceeds, could qualify for loan forgiveness, up to the full amount of the loan.

23.    The SBA delegated authority to third-party lenders to underwrite and approve the PPP loans. In order to obtain a PPP loan, a qualifying business (through

COMPLAINT

its authorized representative) signed and submitted a PPP loan application (SBA Form 2483) online through the lender's application platform. The PPP loan application (SBA Form 2483) required the business (through its authorized representative) to acknowledge the PPP program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan.

24.     Once the Borrower submitted its PPP loan application (SBA Form 2483) to a Lender, the participating lender processed the PPP loan application. If a PPP loan application (SBA Form 2483) was approved by the participating lender, it thereafter funded the PPP loan using its own monies, which were 100% guaranteed by the SBA.

25.     After the Lender processed and approved a borrower's PPP loan application (Form 2483), but prior to the closing of the PPP loan, the Lender submitted to the SBA, the Lender's Application - Paycheck Protection Program Loan Guaranty (SBA Form 2484) to the SBA applying for a guarantee on the loan. For a PPP loan to be approved, the Lender was required to Answer Yes to the following questions in the Lender's Application - Paycheck Protection Program Loan Guaranty (SBA Form 2484) as to the Borrower's certification of its General Eligibility to receive a PPP Loan:

| | | | |
|---|---|---|---|
| • | The Applicant has certified to the Lender that (1) it was in operation on February 15, 2020, has not permanently closed, and was either an eligible self-employed individual, independent contractor, | ☐ Yes | ☐ No |

| | | |
|---|---|---|
| or sole proprietorship with no employees or had employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Form(s) 1099MISC; (2) current economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant; (3) the funds will be used to retain workers and maintain payroll, or make payments for mortgage interest, rent, utilities, covered operations expenditures, covered property damage costs, covered supplier costs, and covered worker protection expenditures; and (4) the Applicant has not and will not receive another loan under the Paycheck Protection Program, section 7(a)(36) of the Small Business Act (15 U.S.C. 636(a)(36)) (this does not include Paycheck Protection Program second draw loans, section 7(a)(37) of the Small Business Act (15 U.S.C. 636(a)(37)). | | |

SBA Form 2484 (emphasis added). Therefore, if a PPP borrower lied on its PPP loan application (SBA Form 2483), the PPP borrower's false certification caused the Lender to submit to the SBA with respect to that PPP Loan, a Lender's Application - Paycheck Protection Program Loan Guaranty (SBA Form 2484) that contained the PPP borrower's False Statement.

26.    SBA Form 2483 provides the following certification, among others  "I have read the statements included in this form, including the Statements Required by Law and Executive Orders, and I understand them" (hereafter the "Understanding Certification").

27.    SBA Form 2483 provides the following certification, among others

"The Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted that have been issued by the Small Business Administration (SBA) implementing the Paycheck Protection Program under Division A, Title I of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) (the Paycheck Protection Program Rule)" (hereafter the "Eligibility Certification").

28.    SBA Form 2483 provides the following certification, among others "All SBA loan proceeds will be used only for business-related purposes as specified in the loan application and consistent with the Paycheck Protection Program Rule" (hereafter the "Use of Proceeds Certification")

29.    SBA Form 2483 additionally provides the following certification, among others: "Current economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant" (hereafter the "Economic Necessity Certification").

30.    The Defendants cannot reasonably show they needed these loans. Especially for these extreme amounts. They cannot show this was "necessary" by any stretch of the imagination. Just based on this reason alone, they should never have take these monies, nor accepted the monies. This money should have been *immediately* returned.

31.    SBA Form 2483 additionally provides the following certification,

COMPLAINT

among others: "The funds will be used to retain workers and maintain payroll or

make mortgage interest payments, lease payments, and utility payments, as

specified under the Paycheck Protection Program Rule; I understand that if the

funds are knowingly used for unauthorized purposes, the federal government may

hold me legally liable, such as for charges of fraud" (hereafter the "Worker

Retention and Payroll Certification.")

32.    SBA Form 2483 additionally provides the following certification,

among others: "During the period beginning on February 15, 2020 and ending on

December 31, 2020, the Applicant has not and will not receive another loan under

the Paycheck Protection Program." (hereafter the "Single Loan Certification.")

33.    SBA Form 2483 additionally provides the following certification,

among others: "I further certify that the information provided in this application and

the information provided in all supporting documents and forms is true and accurate

in all material respects. I understand that knowingly making a false statement to

obtain a guaranteed loan from SBA is punishable under the law, including under 18

USC 1001 and 3571 by imprisonment of not more than five years and/or a fine of

up to $250,000; under 15 USC 645 by imprisonment of not more than two years

and/or a fine of not more than $5,000; and, if submitted to a federally insured

institution, under 18 USC 1014 by imprisonment of not more than thirty years

and/or a fine of not more than $1,000,000" (hereafter the "No False Statements

Certification").

34.    After the borrower submitted the PPP loan application, that application was then processed by a participating lender. If a PPP loan application was approved, the participating lender funded the loan using its own monies, which were then guaranteed by the SBA. Generally, in the event that the borrower defaulted on a PPP loan, the SBA would purchase the borrower's debt from the lending financial institution and take on the responsibility for paying back the loan.

35.    Under the applicable PPP rules and guidance, recipients of PPP loans could apply to have the interest and principal on the PPP loan fully forgiven, meaning that the borrower would owe nothing and would have no obligation to repay the PPP loan. To obtain full forgiveness of the PPP loan, borrowers had to attest that they had "not reduced the number of employees or the average paid hours of [their] employees" during the loan period, that the loan proceeds had been spent on payroll costs and other permitted expenses and that at least 60% of the loan proceeds had been spent on payroll costs (hereafter the "Loan Forgiveness Certification").

36.    Loans could only be used for certain permitted expenses, such as to fund payroll costs and employee benefits, such as health insurance, to pay for, mortgage interest, rent, utilities or worker protection costs related to COVID19.

37.    On April 2, 2020, the SBA posted the First PPP Interim Final Rule

announcing the implementation of the CARES Act. SBA posted additional interim final rules on April 3, 2020, and April 14, 2020. On April 28, 2020, SBA posted an interim final rule supplementing the previously posted interim final rules with additional guidance. See, Federal Register / Vol. 85, No. 82 / Tuesday, April 28, 2020 / Rules and Regulations at, 23450-52, available at https://home.treasury.gov/system/files/136/Interim-Final-Rule-on-Requirements-for-Promissory-Notes-Authorizations-Affiliation-and-Eligibility.pdf. This interim final rule supplemented previous regulations and guidance on several important, discrete issues. The April 28, 2020, Interim Final Rule was immediately effective without advance notice and public comment because section 1114 of the CARES Act authorized SBA to issue regulations to implement Title I of the CARES Act without regard to notice requirements. *Id.*

38.    With respect to the PPP, the April 28, 2020, Interim Final Rule provided Clarification Regarding Eligible Businesses. See, Federal Register / Vol. 85, No. 82 / Tuesday, April 28, 2020 / Rules and Regulations at 23451.

**a. Is a hedge fund or private equity firm eligible for a PPP loan?**

**No. Hedge funds and private equity firms are primarily engaged in investment or speculation, and such businesses are therefore ineligible to receive a PPP loan. The Administrator, in consultation with the Secretary, does not believe that Congress intended for these types of businesses, which are generally ineligible for section 7(a) loans under existing SBA**

regulations, to obtain PPP financing.[1]

**b. *Do the SBA affiliation rules prohibit a portfolio company of a private equity fund from being eligible for a PPP loan?***

Borrowers must apply the affiliation rules that appear in 13 CFR 121.301(f), as set forth in the Second PPP Interim Final Rule (85 FR 20817). The affiliation rules apply to private equity-owned businesses in the same manner as any other business subject to outside ownership or control. However, in addition to applying any applicable affiliation rules, all borrowers should carefully review the required certification on the Paycheck Protection Program Borrower Application Form (SBA Form 2483) stating that "[c]urrent economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant."

## IV.    Defendants' False Statements and Misuse of Proceeds

39.    Defendants applied for and received the PPP Loans in the total amount of $535,940.00. In order to receive the loans, Defendants would have to have completed SBA Form 2483 entitled "Borrower Application Form". In doing so, Defendants intentionally made materially false statements with respect to the Eligibility Certification, the Use of Proceeds Certification, the Economic Necessity

---

[1] SBA guidance, SOP 50 10 5(K), Subpart B, Ch. 2, Para. III.A.18, states speculative businesses are not eligible:

III. INELIGIBLE TYPES OF BUSINESSES

18. Speculation (13 CFR § 120.110 (s))
a. Speculative businesses are not eligible. This prohibits loans to an Applicant for:
i. The sole purpose of purchasing and holding an item until the market price increases; or
ii. Engaging in a risky business for the chance of an unusually large profit.
b. Speculative businesses include:
. . .
ii. Dealing in stocks, bonds, commodity futures, and other financial instruments;
. . .
iv. Research and Development; . . .
SOP 50 10 5(K), Subpart B, Ch. 2, Para. III.A.18 Speculative Businesses.

Certification, the Worker Retention and Payroll Certification, and the No False Statements Certification.

40.     Defendants signed the loan applications, thereby endorsing the Understanding Certification, which means that they agreed that they understood the rules and guidelines of the PPP, including, without limitation the rules regarding eligibility, salary limits, use of proceeds and the certifications made.

41.     Corporate Defendant was not an eligible business, therefore when Defendants made the Eligibility Certification, the certification was false.

42.     The proceeds of the PPP Loan were not and could not have been used only for business-related purposes consistent with the Paycheck Protection Program Rule, because, among other things, Corporate Defendant was not an eligible business, therefore when Defendants made the Use of Proceeds Certification, the certification was false.

43.     The proceeds of the PPP Loan were not necessary to support the ongoing operations of Corporate Defendant. Therefore, when Defendants made the Economic Necessity Certification, the certification was false.

44.     On their loan applications, Defendants intentionally made several key statements which were false and intended to deceive. These key false statements by Defendant made it possible for them to get the loans.

45.     By virtue of the above false statements, when Defendants made the No

False Statements Certification, that certification was false.

## V.    THE FALSE CLAIMS ACT

46.    Plaintiff alleges that, from at least April 30, 2020 through the time of the filing of this Complaint, Defendants violated the FCA by "knowingly" submitting and/or causing the submission of false claims for payment to lenders authorized by the SBA to process PPP loan applications in the form of PPP Applications and the resulting receipt and failure to return PPP loans. These claims for payment were false because Defendants: (1) made knowingly false statements and certifications in their PPP applications, and in certifications accompanying its receipt of federal PPP funds, that it was complying with, and would continue to comply with, applicable laws and regulations governing the award of PPP loans; and/or (2) made, or caused to be made, false representations in loan applications that the Corporate Defendants were eligible to receive such PPP loans. Moreover, Defendants' false claims caused on numerous occasions Pacific Enterprise Bank to submit to the SBA, a Lender's Application - Paycheck Protection Program Loan Guaranty (SBA Form 2484) that contained Defendants' false statement concerning Defendants' general eligibility for the PPP loans, on which the SBA relied and paid to the lenders.

47.    The False Claims Act prohibits fraudulent conduct in connection with federal programs, including the knowing submission of false claims for payment to the government. See 31 U.S.C. § 3729(a)(1)(A). In these circumstances, liability may attach if the omission renders those representations misleading. 41. 31 U.S.C. § 3729(a)(1)(A) and (B) of the FCA provide that:

(1) . . . any person who—

(A) knowingly presents, or causes to be presented, a false or fraudulent

claim for payment or approval; [or]

(B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim,

. . .

(G) knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government, is liable to the United States Government . . .

31 U.S.C. § 3729(a)(1)(A), (B), and (G) (2020).

42. The scope of a false or fraudulent claim is to be broadly construed. As used in the FCA, a "claim"

(A) means any request or demand, whether under a contract or otherwise, for money or property and whether or not the United States has title to the money or property, that—

(i) is presented to an officer, employee, or agent of the United States; or

(ii) is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest, and if the United States Government—

(I) provides or has provided any portion of the money or property requested or demanded; or

(II) will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded; . . .

31 U.S.C. § 3729(b)(2) (2020).

17

COMPLAINT

48.     A person who violates the False Claims Act during the time period at issue "is liable for a civil penalty as adjusted, plus 3 times the amount of damages which the United States Government sustains because of the act of that person." 31 U.S.C. § 3729(a). See 28 C.F.R. § 85.3(a)(9); Department of Justice, 28 CFR Part 85, Civil Monetary Penalties Inflation Adjustments for 2022 published at: https://www.govinfo.gov/content/pkg/FR-2022-05-09/pdf/2022-09928.pdf.

## VI.     JURISDICTION & VENUE

49.     This Court has subject matter jurisdiction over the Plaintiff's claims brought under the FCA, 31 U.S.C. §§ 3279, et seq., pursuant to 31 U.S.C. §§ 3730 and 3732. This Court has supplemental jurisdiction to entertain the common law and equitable causes of action under 28 U.S.C. § 1367(a).

50.     This Court has personal jurisdiction over Defendants pursuant to 31 U.S.C. § 3732(a) because at all times material hereto, Defendants transacted business and are found in the Central District of California, and acts proscribed by 31 U.S.C. § 3729 occurred in this district.

51.     Venue is proper in this district pursuant to 31 U.S.C. § 3732(a), and under 28 U.S.C. §§ 1391(b) and 1395(a), because the Corporate Defendant is headquartered in Los Angeles County, within the Central District of California. Moreover, the Individual Defendant resides and does business in Los Angeles County within the Central District of California. Furthermore, acts that form the basis of this Complaint occurred in the Central District of California.

52.     Relator's claims and this Complaint are not based upon prior public

COMPLAINT

disclosures of allegations or transactions in a federal criminal, civil, or administrative hearing in which the Government or its agent is a party; in a congressional, Government Accountability Office, or other federal report, hearing, audit, or investigation; or from the news media. To the extent that there has been a public disclosure unknown to Relator, it is the "original source" within the meaning of 31 U.S.C. § 3730(e)(4)(B) and/or the public disclosure is a result of Relator voluntarily providing this information to the United States Government prior to filing this *qui tam* action.

## VII.   FIRST CAUSE OF ACTION

### FALSE OR FRAUDULENT CLAIMS (31 U.S.C. § 3729.(a)(1)(A-B))

53.     Plaintiff alleges and incorporates by reference each and every allegation contained in all prior paragraphs of this complaint.

54.     This is a claim for treble damages and penalties under the False Claims Act, 31 U.S.C. § 3729, *et seq*., as amended.

55.     By virtue of the acts described above, Defendants knowingly presented, or caused to be presented, to an officer or employee of the United States government, false or fraudulent claims for payment or approval, in violation of the FCA, 31 U.S.C. § 3729(a)(l)(A).

56.     By virtue of the acts described above, Defendants knowingly made or used, or caused to be made or used, false or fraudulent records or statements

material to false or fraudulent claims for payment by the Government.

57.    Because of the Defendants' acts, the United States sustained damages in an amount to be determined at trial and, therefore, is entitled to treble damages under the FCA, plus civil penalties of not less than $12,537.00 and not more than $25,076.00 for each and every violation arising from Defendants' unlawful conduct alleged herein.

## **PRAYER FOR RELIEF**

WHEREFORE, *qui tam* Plaintiff/Relator prays for judgment against Defendants, as follows:

1.    That this Court enter judgment against each Defendant in an amount equal to three times the damages that the United States has sustained because of Defendants' action, plus a civil penalty of not less than $12,537.00 and not more than $25,076.00 for each and every false claim as are required by law, together with all such further relief as may be just and proper.

2.    Such other relief as this Court may deem just and proper, together with interest and costs of this action.

3.    Reasonable attorney fees, litigation expenses, and costs of suit.

///

///

COMPLAINT

## **<u>JURY DEMAND</u>**

Plaintiff demands a trial by jury on all issues so triable.

Dated: June 27, 2022                    THE LAW OFFICE OF HAKIMI & SHAHRIARI

By:    /s/ Anoush Hakimi
       ANOUSH HAKIMI, ESQ.
       Attorney for Plaintiff

COMPLAINT